KENNETH H. WINE(#142385)
Hallinan & Wine
345 Franklin Street
San Francisco, CA  94102
Telephone:  (415) 621-2400
Facsimile: (415) 575-9930
email: kenwine@hotmail.com

Counsel for GUSTAVO GAMEZ-VELASQUEZ

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR-19-367-9 CRB |
| Plaintiff, | **SENTENCING MEMO OF GUSTAVO GAMEZ-VELASQUEZ; REQUEST FOR VARIANCE** |
| v. | |
| GUSTAVO GAMEZ-VELASQUEZ, | Date: March 11, 2020 Time: 9:30 a.m. |
| Defendant. | |
| | HON. CHARLES R. BREYER |

**I.      Background**

On February 12, 2020, Defendant Gustavo Gamez-Valesquez ("Gustavo") plead guilty to a single count of 21 U.S.C. §843(b), Illegal Use of a Communication Facility.  Gustavo has been in custody for a little over 7 months.  His criminal history category is I.   The total agreed offense level is 19, with the parties agreeing to disagree as to the "role in the offense" adjustment under U.S.S.G. §3B1.2.  That is, the government argues for a "minor" role adjustment to a final total offense level of 17, with a guideline range of 24-30 months.  The defense believes Gustavo is more accurately assigned a "minimal" role in the overall conspiracy, for a final total offense level of 15, with a guideline range of 18-24 months. If the Court decides to grant a variance, the government is asking for a variance to a sentence of 13 months (of which Gustavo would actually serve about 11 months), while the defense requests the Court sentence Gustavo to time served of 7 months.

## II.  Argument

The plea agreement fairly characterizes Gustavo as a street level dealer who was "required to sell drugs" on behalf of his landlord in order to pay his rent. The government has supplied the Court with a list of the defendants in this case.  Gustavo appears in the bottom four of the list.  Over a 15 month period, he is heard on wiretaps making 11 total requests for a street level quantities of drugs. In that period of time, the government claims Gustavo was responsible for distributing a total of about 2 ounces of meth and 3 ounces of cocaine base.

Gustavo is Honduran.  When he came to this country, he was without housing.  He has three children and a wife to support.  In Honduras, Gustavo made about $1.50/hour.  Working 12 hours days, 6 days a week, he would bring home about $400/month as a construction worker in his village. It is obvious he came here, in part, to earn money to send home to his family.

He was offered housing with a catch.  He must sell drugs to pay for the rent.  Gustavo did so, but, from the wiretaps, he did so rarely, making just 11 calls in 15 months for street level amounts of drugs, that is, bags sold on the street in the $20-$40 a bag range.  Under any scenario, Gustavo was had a "minimal" role in this drug trafficking operation, with a 4 level downward departure to a final offense level of 15, CHC I, and a final guideline range of 18-24 months.

### A.  3553(a) Factors

With the advent of *U.S. v. Booker*, 125 U.S. 738 (2005), the Court was finally restored with the power to sentence as it sees fit within the statutory framework of 18 U.S.C. § 3553(a).  The restoration of this power gives the Court real discretion to fashion a sentence *"sufficient but not greater than necessary"* to achieve the purpose of sentencing set forth in 18 U.S.C.§3553(a)(2) after considering:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant [§3553(a)(1)];

(2) the need to reflect the seriousness of the offense, respect for the law, deterrence to criminal conduct, and protection of the public [§3553(a)(2)(A)-(C)]

(3) the kinds of sentences available [§3553(a)(3)];

(4) the advisory – but *non-mandatory* –  Sentencing Guidelines [§3553(a)(4) and (a)(5)];

(5) the need to avoid unwarranted sentencing disparity among defendants with similar records and similar conduct [§3553(a)(6)]; and

(6) the need to provide restitution to any victim of the offense [§3553(a)(7)].

In this case, the Court must choose the minimally sufficient sentence to fulfill the purposes of sentencing based on a consideration of all §3553(a) factors. *Kimbrough v. U.S.*, 128 S.Ct. 558, 570 (2007). The Supreme Court has also rejected the notion that a sentence that amounts to a substantial variance from the Guidelines needs to be justified by extraordinary circumstances, holding instead that appellate courts must review all sentences, both within and without the Guidelines range, under a differential abuse of discretion standard. *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586, 591 (2007).

Two subsequent Supreme Court decisions, *Spears v. United States*, 555 U.S. 261(2009) and *Nelson v. United States*, 555 U.S. 350 (2009), have reiterated that the Guidelines are now truly advisory and that there is no presumption at the district court level that a Guidelines sentence is inherently reasonable. As stated by the Seventh Circuit, "[t]he district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir.2007).

Gustavo is one of dozens of Hondurans swept up by the government in a year long investigation.  Thousands of phone calls were intercepted. The government has produced an enormous amount discovery – in the range of tens of thousands of pages of investigation, phone calls, and wiretap data.  As the government notes in its sentencing brief, Gustavo appears in the original complaint in paragraphs 93, 113, and 154.  He only is requesting a small amount of drugs in paragraph 93.  In paragraph 113, Gustavo is asked if he wants any drugs, and Gustavo replies as "not until later", when Gustavo gets off work. In paragraph 154, two other higher level defendants are discussing Gustavo, and say, essentially, that he will have to figure out how to pay the rent.

//

From the vast amount of discovery and the complexity of the investigation, the government has a clear eyed view of inner workings and details of this DTO.  Gustavo, with his occasional low level street dealing, is obviously a minimal participant in a much larger organization.  Gustavo will also suffer obvious collateral consequences.  He will be deported to Honduras and never be allowed to return to the United States, despite the fact that Honduras is one of the most dangerous countries in the world, ruled largely by gang violence. *See, Jordan v. De George*, 341 U.S. 223, 232 (1951)(Jackson, J.) (deportation is "a life sentence of banishment in addition to the punishment which a citizen would suffer from the identical acts.").

Deportation is a form of banishment, one of the oldest forms of punishment in existence. From the tale of Adam and Eve being thrown out of the Garden of Eden, to a defeated Napolean being sent to the Isle of Elba, banishment has served as powerful deterrent throughout history. "Ostracism" was used by the Ancient Greeks and Romans, where a capital defendant could choose to leave the country forever.  Justices in Georgia, Mississipi, Arkansas, Florida and Kentucky still have intra-state exile as sentencing options. Clearly, Gustavo's deportation should fairly be considered a serious "collateral consequence", as it is a punishment from which he can never escape.

### III.   Conclusion

For the reasons set forth above, the Defendant Gustavo Gamez-Valesquez requests the Court sentence him to time served.  This will allow his immediate transfer to ICE custody, and his banishment from the United States for as long as he shall live.

HALLINAN & WINE


DATED: March 5, 2020              /s/ Kenneth Wine
                                  Kenneth H. Wine, Esq.
                                  Attorney for Defendant
                                  GUSTAVO GAMEZ-VALESQUEZ